# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 755 | **DATE** | 4/12/2004 |
| **CASE TITLE** | Keystone vs. Conseco Med. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Defendant Employee Benefit Corporation's motion for summary judgment (R. 47-1) is denied as moot in light of its amended motion for summary judgment (R. 50-1). Defendant's motion for summary judgment (R. 50-1) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 1 2 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | APR 1 2 2004 | |
| TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| KEYSTONE CONSOLIDATED INDUSTRIES, | ) | |
| Plaintiff, | ) | |
| | ) | No. 02 C 0755 |
| v. | ) | |
| | ) | |
| CONSECO MEDICAL INSURANCE COMPANY and EMPLOYEE BENEFITS CORPORATION, | ) | DOCKETED |
| | ) | APR 1 2 2004 |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Keystone Consolidated Industries ("Keystone") filed a five count First Amended

Complaint ("FAC") against defendants Conseco Medical Insurance Company ("Conseco") and

Employee Benefits Corporation ("EBC"), alleging breach of contract against Conseco (Count I)

and EBC (Count IV), negligent misrepresentation against Conseco (Count III) and EBC (Count

V), and estoppel against Conseco (Count II).

EBC moved for summary judgment on Counts IV and V. For the reasons stated herein,

EBC's motion is granted.

## LEGAL STANDARDS

### I.    Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing

the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323,

106 S. Ct. 2548, 2552 (1986). A genuine issue of triable fact exists only if "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*,

259. F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

106 S. Ct. 2505, 2510 (1986)). A party will successfully oppose summary judgment only if it

presents "definite, competent evidence to rebut the motion." *Equal Opportunity Comm'n v.*

*Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record

in the light most favorable to the nonmoving party, and draws all reasonable inferences in his

favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## II.     Local Rule 56.1

The Court first addresses Keystone's failure to comply with Local Rule 56.1, which

governs summary judgment briefing in the Northern District of Illinois. L.R. 56.1. Local Rule

56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the

moving party contends there is no genuine issue and that entitle the moving party to a judgment

as a matter of law." L.R. 56.1(a)(3). The opposing party must then file "a concise response to the

movant's statement," in which the nonmoving party must "admit or deny each factual statement

proffered by the defendant . . . , and designate with specificity and particularity those material

facts believed to establish a genuine dispute for trial." *Greer v. Board of Educ. of the City of*

*Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). The nonmoving party may also file a statement of

additional facts that require the denial of a summary judgment. L.R. 56.1(b)(3)(B). The moving

party must submit a reply addressing each additional fact. In its Rule 56.1 response, Keystone

consistently fails to include "specific references to the affidavits, parts of the record, and other supporting materials" as required by Local Rule 56.1. The consequences of Keystone's failure to adhere to Local Rule 56.1 are discussed below.

## BACKGROUND

Keystone is an employer that provides its employees with medical coverage via a self-funded plan (the "Plan"). (R. 43-1, FAC ¶¶ 1, 7.) EBC is an insurance broker that administered the Plan for Keystone. (*Id.* ¶¶ 2, 8.) Keystone sought to obtain stop-loss coverage for the Plan. (*Id.* ¶¶ 2, 8.) On October 19, 1999 EBC submitted a bid package on behalf of Keystone to the entire market of insurers who write stop-loss policies for self-funded medical plans. (*Id.* ¶¶ 2, 9; R. 51-1, Def.'s Statement of Undisputed Material Facts ("Def.'s Rule 56.1 Statement") ¶ 3(a); R. 54-1, Pl.'s Response Statement of Undisputed Material Facts ("Pl.'s Rule 56.1 Response") ¶ 3(a).) Conseco responded to EBC's bid request with bids on December 14 and 17, 1999. (*Id.* ¶ 3(f).) Conseco unambiguously stated that it based its bids on the information that Keystone provided to Conseco. (*Id.*) Keystone verbally committed to award its business to Conseco on December 28, 1999. (*Id.* ¶ 3(j).)

Conseco issued a reinsurance treaty with an effective date of January 1, 2000 that outlined Keystone's coverage. (Pearl Aff. ¶ 11.) Conseco issued a copy of the reinsurance treaty to Keystone and EBC on September 5, 2000. (*Id.*) The reinsurance treaty contained an exclusion for medical bills that resulted from a participant having been injured while under the influence of alcohol. (R. 51-1, Def.'s Rule 56.1 Statement ¶ 3(m); R. 54-1, Pl.'s Rule 56.1 Response ¶ 3(m).) Conseco never advised EBC or Keystone that the policy it intended to issue excluded coverage for alcohol related injuries. (*Id.* ¶ 3(o).)

3

On March 3, 2000, a Keystone employee covered by the Plan was injured in a motor

vehicle accident while under the influence of alcohol. (R 43-1, FAC ¶¶ 11-12.) On behalf of

Keystone, EBC submitted the injured employee's medical bills to Conseco for payment. (*Id.* ¶

13.) Conseco refused to pay the claim, citing the alcohol-related injury exclusion. (*Id.* ¶ 14.)

Keystone filed suit against Conseco and EBC in this Court.

## ANALYSIS

### I.       Breach Of Contract (Count IV)

Keystone's breach of contract claim fails because Keystone cannot establish a genuine

issue of material fact as to whether a contract existed that obligated EBC to procure stop-loss

insurance for Keystone.

Under Illinois law,[1] a party claiming breach of contract must establish that: (1) a valid

and enforceable contract existed; (2) the plaintiff performed according to the contract; (3) the

defendant breached the contract; and (4) the breach resulted in damages. *D.S.A. Fin. Corp. v.

County of Cook*, 801 N.E.2d 1075, 1078 (Ill. App. Ct. 2003) (citations omitted). A valid contract

requires the parties to agree to definite and essential terms that enable the court to determine the

parties' intent and whether a breach occurred. *Academy Chicago Publishers v. Cheever*, 144 Ill.

2d 24, 578 N.E.2d 981, 983-84 (Ill. 1991). Because the existence of a contract is a question of

law, *Barefield v. Village of Winnetka*, 81 F.3d 704, 709 (7th Cir. 1996); *Corluka v. Bridgford

Foods of Ill., Inc.*, 284 Ill. App. 3d 190, 194, 671 N.E.2d 814, 818 (Ill. App. Ct. 1996), the

---

[1] Neither party addresses whether Illinois or Texas law should apply. Because both
parties rely on Illinois law, and because federal courts sitting in diversity apply the substantive
law of the state in which the suit was brought, *Orix Credit Alliance, Inc. v. Taylor Mach. Works,
Inc.*, 125 F.3d 468, 478 n.4 (7th Cir. 1997) (citing *Heller Int'l Corp. v. Sharp*, 974 F.2d 850, 856
(7th Cir. 1992)), the Court applies Illinois law to Keystone's breach of contract and negligent
misrepresentation claims.

question whether the parties agreed to the essential terms of the contract is a question of law. *Mansourou v. John Crane, Inc.,* 248 Ill. App. 3d 963, 968, 618 N.E.2d 689, 692 (Ill. App. Ct. 1993) (citations omitted).

Keystone bears the burden of showing that a contract exists. *Carpenter v. City of Northlake,* 948 F. Supp. 759, 764 (N.D. Ill. 1996). Simply alleging that a contract existed, even if the allegations are adequate to state a claim, is insufficient to avoid summary judgment.[2] *Id.* Keystone must do more than merely argue the existence of a contract—Keystone must identify deposition testimony, documentation, or some other evidentiary support showing the existence of a contract. *See id.* Keystone has failed to do so.

Keystone presents no evidence of an enforceable contract. *See Carpenter,* 948 F. Supp. at 763. EBC states in its Rule 56.1 statement that "EBC never had an oral or written agreement with Keystone that EBC would obtain insurance coverage for Keystone as outlined in the bid package." (R. 51-1, Def.'s Rule 56.1 Statement ¶ 3(b).) Keystone merely responds that "Plaintiff disputes and denies the allegations set forth in Paragraph b." (R. 54-1, Pl.'s Rule 56.1 Response ¶ 3(b).) Keystone's response fails to include "specific references to the affidavits, parts of the record, and other supporting materials" as required by Local Rule 56.1. Accordingly, the Court deems EBC's statement admitted.

Keystone provides no other evidence as to the existence of a contract between EBC and Keystone that obligated EBC to procure particular coverage for Keystone. As a result, Keystone

---

[2] Where the nonmovant bears the burden of proof at trial, the movant need not negate the opponent's claim. *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552. Accordingly, "the burden on the moving party may be discharged by [pointing out to the district court] that there is an absence of evidence to support the non-moving party's case." *Id.* Once the moving party satisfies this burden, the opposing party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

fails to establish a genuine issue of material fact as to whether such a contract existed, and

summary judgment is granted on Count IV.

## II.     Negligent Misrepresentation (Count V)

Keystone's negligent misrepresentation count fails because Keystone improperly seeks to

recover damages based solely on economic losses, and because it fails to establish a genuine

issue of material fact as to whether EBC is a "commercial information provider."

To prove negligent misrepresentation,[3] Keystone must show:  (1) a false statement of

material fact; (2) carelessness or negligence in ascertaining the truth of the statement by

defendant; (3) an intention to induce the other party to act; (4) action by the other party in

reliance on the truth of the statements; (5) damage to the other party resulting from such reliance;

and (6) that defendant owed a duty to plaintiff to communicate accurate information.[4] *Orix*, 125

F.3d at 475 n.2 (citing *Board of Educ. v. A, C and S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580

(1989)).

Illinois law generally prohibits a plaintiff from recovering in tort for purely economic

losses, although the prohibition is not absolute. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d

---

[3] Under Illinois law, negligent misrepresentation and common law fraud require that the plaintiff prove all but one of the same elements. *Quinn v. McGraw-Hill Co., Inc.*, 168 F.3d 331, 335 (7th Cir. 1999) (citing *Board of Educ. v. A, C and S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580 (1989)). Negligent misrepresentation differs from common law fraud in that in order to sustain a negligent misrepresentation action, the Plaintiff need not show knowledge or recklessness regarding the truth of the statement of material fact, but instead must show that the defendant was careless or negligent in ascertaining the truth of the statement. *A, C and S*, 131 Ill. 2d at 452, 546 N.E.2d 580 (1989).

[4] To establish a duty, the plaintiff must show that the defendant making the allegedly negligent misrepresentation "is in the business of supplying information for the guidance of others in their business transactions" to recover under Illinois law. *Id.* (citing *Rankow v. First Chicago Corp.*, 870 F.2d 356, 362 (7th Cir. 1989) (quoting *Moorman Mfg. Co. v. Nationall Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, 452 (Ill. 1982)).

69, 88, 435 N.E.2d 443, 451 (Ill. 1982); *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F. Supp.

692, 696 (N.D. Ill. 1989) (citations omitted). One such exception is the "commercial information

provider" exception. Courts narrowly construe this exception. *Gerdes*, 712 F. Supp. at 697. To

qualify for this exception, the plaintiff must establish that the defendant is "in the business of

supplying information for the guidance of others in their business dealings" by establishing that

the defendant 1) is in the business of supplying information, and 2) provides this information for

the guidance of others in its business relations with third parties. *Id.* at 696. One is not in the

business of "supplying information" if the information is merely ancillary to the services

rendered or products sold. *Lemont Partners v. Meijer Stores Ltd. Partnership*, No. 02 C 1799,

2002 WL 31641623, at *13 (N.D. Ill. Nov. 22, 2002).

Keystone seeks damages for purely economic losses,[5] but argues that the "commercial

information provider" exception applies because EBC is in the business of supplying

information. The Court disagrees. EBC argues that, as Keystone's agent,[6] it merely relayed

information from Conseco to Keystone. EBC stated in its Rule 56.1 statement that "[a]ll

representations containing the nature and the extent of the coverage to be provided to Keystone

originated with [Conseco]." (R. 51-1, Def.'s Rule 56.1 Statement ¶ 4(c).). In response, Keystone

states that:

> Defendant denies the allegation set forth in Paragraph c. There is evidence to
> support the allegations in Paragraph 47 of the First Amended Complaint which
> is the paragraph quoted by EBC. As stated above, the Christina Cole fax of

---

[5] EBC states in its Rule 56.1 statement that "[t]he damages sought by Keystone are economic damages arising out of an alleged contract." (R.51-1, Def.'s Rule 56.1 Statement ¶ 4(d).) Keystone does not adequately dispute this statement, and the Court deems it admitted.

[6] It is undisputed that EBC served as Keystone's agent. (R. 55-1, Pl.'s Resp. Br. at 1-3, 7.)

7

December 29, 1999 supports the reasonable conclusion and/or inference that the requested coverage had been obtained. Further, First Amended Complaint Exhibit B shows evidence that EBC was acting as agent of record for the procurement of the requested insurance package. By nature of the relationship between EBC and Keystone throughout the bid process there was an agreement for EBC to procure a treaty with certain provisions as requested.

(R. 54-1, Pl.'s Rule 56.1 Response ¶ 4(c).) Thus, Keystone identifies two pieces of

evidence—the "Christina Cole fax" and Exhibit B—to refute EBC's statement that all

information originated with Conseco. Neither piece of evidence, however, supports an inference

that EBC was a commercial information provider.

The cover sheet is the only part of the fax written by EBC employee Christina Cole. The

cover sheet states in its entirety:

Kathy, Please sign the following application and fax it back to my
attention. I will need you to mail me the original ASAP. . . . You will
need to make the first month's premium payment, the following is how it
is broken out.

(R. 54-1, Pl.'s Rule 56.1 Response, Ex. B.) Attached to this cover sheet is an insurance

application undisputedly prepared by Conseco. On its face, the Cole fax states that the sender is

merely conveying information to Keystone. Nothing in the Cole fax suggests that the sender is

anything but a conduit of information.

The second piece of evidence that Keystone cites also fails to support an inference that

EBC is a commercial information provider. It merely establishes that EBC served as "agent of

record" on Keystone's behalf. But EBC does not dispute that it served as Keystone's agent. In

any event, does not suggest that EBC is a commercial information provider.

Keystone fails to dispute that EBC is in the business of administering Keystone's self-

funded insurance, not supplying information for the guidance of others in their business dealings.

8

If anything, EBC acted as a mere conduit of information when it relayed information from Conseco to Keystone. Where a party acts as "a sort of informational conduit, and never purports to independently offer 'information' regarding the [matter] it may avoid liability in a negligent misrepresentation action." *Zahorik v. Smith, Barney, Harris, Upham & Co., Inc.*, 664 F. Supp. 309, 314 (N.D. Ill 1987). The "commercial information provider" exception does not apply.

## CONCLUSION

Keystone's breach of contract claim fails because Keystone cannot establish the existence of a contract. Keystone's negligent misrepresentation claim fails because Keystone seeks recovery in tort for purely economic losses and cannot establish that the "commercial information provider" exception applies. Accordingly, summary judgment is granted as to Counts IV and V. This resolves all claims against EBC in this case.

Dated: April 12, 2004                         ENTERED

                                              _____
                                              AMY J. ST. EVE
                                              United States District Court Judge

9